# GALVESTON TERM, 1865.

## EX PARTE SAMUEL BLUMER.

The applicant is a native of Glarus, in the Republic of Switzerland; he came to Texas, on business, in 1854, and remained here a few months, when he returned again to his native home in Switzerland; a portion of the time he was in Texas, he worked as a day laborer for R. H. Peck, at the butcher business. In December, 1858, he again left home to come to Texas, traveling by way of Paris, Havre—passing through New York on the 7th day of June, 1859—and New Orleans, stopping at these and other places, and arriving in Texas on the 24th day of June, 1861. He was sick when he reached here, and remained in bad health for about two years, able to work a month or two, and then sick for a month or two, and did work when able to do so. Since he recovered his health, he has performed manual labor for different persons for pay, such as splitting rails, butchering, and working on a farm, and following the ordinary avocations of the country; and was so employed at the time of his enrollment. On his arrival in Texas, he said he had not come to make this his home, and declared his intention not to remain in Texas, but to return again to Switzerland, as soon as he recovered his health sufficiently to travel, and got money enough. Since he recovered his health, in 1863, he has been destitute of means, and has continuously and often expressed his determination to leave Texas, and to return to his native home to live, as soon as he earned money enough to defray his expenses in travelling from here there; but never stated any particular time when he would start, nor has he, since his return to Texas, ever put himself in motion to leave the State, or manifested, by any act done, an immediate intention to start at any time, during that time. He has never declared his intention to become a citizen of the Confederate States; has never voted at any election, but has, at all times, refused to take any part in elections, alleging, as a reason therefor, that he was not a citizen of the country. He has never purchased property here, or invested money in business; he is a single man, and is thirty-two years old. He was enrolled as a conscript, on the 2d day of July, 1864. Writ issued August 13th. *Held*, that the applicant is not such a resident of the Confederate States, within the meaning of the conscript laws, as to render him liable to military service under those laws.

The laws of conscription embrace all white men of the age of the applicant, " who are residents of the Confederate States."

The word resident is ordinarily used to designate persons in a particular locality, as of a city, town or county.

The word " residents," in the conscript laws, is used to designate a class within the whole limits of the government.

The term " residents," as used in the conscript laws, includes not only citizens, native and naturalized, but also foreigners whose residence in this country

has been such as to attach to them a national character, as members of society.

The inhabitants, as distinguished from citizens, are strangers who are permitted to settle and stay in the country : bound by their residence to the society ; they are subject to the laws of the State, while they reside here, and they are obliged to defend it. Such are the foreigners intended to be embraced by the term " residents," used in the conscript laws.

Such a residence, it is believed, will generally be found to correspond with what is meant by domicil, as it is now understood and adjudged by the Courts of England and America.

An act of Congress ought never to be construed to violate the law of nations, if any other possible construction remains.

The rule adopted by the President, that foreigners, not domiciled in the Confederate States, are not liable to enrollment, is in harmony with the law of nations; is based upon an undoubted and recognized right, and is one of certainty and safety.

The order from the Head Quarters, Bureau of Conscription, T. M. D., of date April 9, 1864, subsequent to the passage of the act of February 17th, 1864, which retains the same designating word " residents,",cannot be held as evidence of the construction by the President originally, or of Congress at any time.

The domicil of birth remains a party's domicil until a new one is acquired.

A person being at a place, is *prima facie* evidence that he is domiciled there, and it lies upon him to rebut that presumption, when the place of his domicil is brought in question.

This presumption may be rebutted by the party showing that the facts connected with his residence, are not inconsistent with a *bona fide* intention, on his part, of not making the place of residence his domicil, or of retaining his former domicil.

Declarations of a party's intention in relation to his domicil, are admissible as part of the *res gestæ*.

Such declarations are to be credited when not unreasonable in themselves, not inconsistent with other facts, and not under circumstances creating suspicion of insincerity,

In most cases of domicil, the question of intention is made to depend upon declarations, in proportion as they tend to explain, and are not inconsistent with the other facts.

When it is once established, that a foreigner has finally abandoned his domicil of origin, for the purpose of settling here, and does arrive and fix his abode here, his frequent removals from one place to another would not prevent his domiciliation in this country ; and any declarations that he might make afterwards of his intention to return to his native home, would amount to nothing, unless accompanied by the act of returning, or something tantamount thereto.

Ex parte John Luscher, page 21, cited and affirmed.

Sickness and pecuniary destitution may assist other facts in rebutting the *prima facie* evidence arising from a party's being in a country, in a question of domicil.

A general residence might be acquired *by lapse of time*, from an accidental detention, continued by the misfortune and necessities of a party.

Appeal from the Judgment of Hon. JAMES H. BELL, Associate Justice of the Supreme Court, sitting in Chambers, at Austin.

*M. H. Bowers*, for appellant.

*Robards & Morris*, for appellee.

ROBERTS, C. J., delivered the opinion of the Court, and cited the following

authorities: Vattel, page 160, sec. 213, 218, 219, p. 160–1–2 ; Bruce v. Bruce, 2d Bos & Puller, 229, and note ; The Venus, 8th Cranch, 279 ; Story's Conflict of Laws, sec. 48, 49, 53, &c. ; 1st Binney, 350, and note ; Ennis v. Smith, 14th Howard, 428 ; Ex parte Thompson, 1 Wend., 46 ; Read v. Drake, decided by Judge W. P. Hill, in November, 1864 ; Remarks of Sec'y Marcy in the Koszta case, in Messages and Pub. Doc., 1854–5, part I, page 40–45 ; Murray v. The Charming Betsy, 1 & 2 Cranch, 143 ; Wheaton's Elements of International Law, 370 and 394 to 405 ; 1 Black. Com., 366 ; Kilburn v. Bennett, 3 Metcalf, 20 ; Thorndike v. City of Boston, 1 Met., 247 ; 8 Louisiana, 337 ; 8 Pickering, 476 ; 5 Greenleaf, 266 ; Horne v. Horne, 9 Iredell Law R., 108 ; Leach v. Pillsbury, 15 New Hampshire, 138 ; Laneuvelle v. Anderson, Eng. Com. L. & Equity R., 22, 641 ; 2d Maine, 212 and 420, and 354 ; Putnam v. Johnson, 10 Mass., 490 ; Green v. Windham, 13 Maine, 228 ; Ex parte John Luscher, decided at Austin Term, 1864 ; Bempde v. Johnston, 3 Vesey, p. 202 ; Hoskins v. Matthews, 35 Eng. Law and Equity R., 532 ; Johnson v. Beatie, 10 Clark and Fin., 139 ; Elbers v. United Ins. Co., 16 Johns, 133 ; Brown v. Smith, 11 Eng. Com. L. and Equity R., 9.

Judgment reversed, and applicant discharged.

MOORE, J., did not sit in this case.